IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

EDRICK FLOREAL-WOOTEN; JEREMIAH LITTLE;
JULIO GONAZALES; DAYMAN BLACKBURN;
THOMAS FRITCH                                                                          PLAINTIFFS

VS.     NO.  5:22-cv-05011-TLB

TIM HELDER, SHERIFF OF WASHINGTON COUNTY,
ARKANSAS, in his individual capacity;
KARAS CORRECTIONAL HEALTH, P.L.L.C;
DR. ROBERT KARAS, M.D., in his individual capacity                      DEFENDANTS

**DEFENDANTS' REPLY TO RESPONSE TO
MOTION FOR JUDGMENT ON THE PLEADINGS**

Come now, Defendants, by and through Undersigned Counsel, and for their Reply to Response to Motion for Judgment on the Pleadings herein state and allege:

**INTRODUCTION**

Plaintiffs, five former inmates of the Washington County Detention Center, brought suit seeking injunctive relief and claiming violation of their right to due process, by and through 42 U.S.C. § 1983, related to medical treatment they received. Upon the filing of a dispositive motion for judgment because their equitable claims (which were their sole claims) were moot, Plaintiffs amended and then asserted they had damages. Defendants have filed a second motion for judgment on the pleadings and Plaintiffs have responded. For the reasons stated in the original motion and herein, Defendants are entitled to judgment and immunity.

At the outset, it is important to note that Plaintiffs are correct, that their *factual* allegations must be taken as true including all *reasonable* inferences from those allegations in assessing Defendants' motion. However, Plaintiffs cannot amend their lawsuit via arguments in response to

1

a motion to dismiss[1] (or here, judgment on the pleadings) and cannot avoid dismissal by misrepresenting their own Amended Complaint. As one crucial but merely illustrative example, consider Plaintiffs' argument about Sheriff Helder. Plaintiffs claim in their Response that the Amended Complaint "...further alleges that Sheriff Helder was aware of (or should have been aware of) Karas Defendants' ***policy related to the administration of Ivermectin without informed consent but refused to end it***." Doc. No. 42, p. 21 (emphasis added). That is not what the PLaitniffs allege. The Court only needs to look to the Amended Complaint to see Plaintiffs' plain distortion of their own allegations in this case. Nowhere in paragraphs 57 or 58 of the Amended Complaint (Doc. No. 34) do Plaintiffs allege that they were administered Ivermectin *without informed consent* or that the *Karas Defendants* had a *policy* of administering Ivermectin without informed consent. *See also* Doc. No. 34, ¶ 16.

Paragraph 32 of the Amended Complaint is Plaintiffs' operative paragraph to allege purported deception in the *administration* of Ivermectin by "Karas Defendants." Plaintiffs do not allege who allegedly misled them. Thus, Plaintiffs do not allege any actual Defendant before this Court misled them during the administration of Ivermectin: they do not allege Sheriff Helder misled them or did anything relative to their healthcare, and they do not allege Dr. Karas either misled them or administered Ivermectin (or any medicine) to Plaintiffs himself. Finally, nowhere do Plaintiffs allege any policy of Karas Correctional Health (KCH) directed anyone to commit such alleged deception in administering Ivermectin or to fail to obtain informed consent. These allegations, and lack of allegations, fail to state a claim upon which relief can be granted against these Defendants.

---

[1] *Fischer v. Minneapolis Pub. Sch.*, 792 F.3d 985, 990, fn. 4 (8th Cir. 2015).

What has occurred, plainly, is Plaintiffs have realized their failure to allege what they now apparently *want* to allege, and, thus, have embellished what the Amended Complaint actually says in their Response to the Motion for Judgment on the Pleadings to avoid dismissal. That is not permissible. *Fischer*, 792 F.3d at 990, fn. 4.

The Defendants reiterate that Plaintiffs *never* allege that Dr. Karas himself administered any medicine to any of the Plaintiffs or that Dr. Karas or Sheriff Helder allegedly misled any of the Plaintiffs into taking Ivermectin by claiming it was some other substance. Indeed, Plaintiffs don't claim any particular Defendant here was personally involved in their salacious allegations. Rather, Plaintiffs routinely refer to the "Karas Defendants" without delineating who allegedly did what, except when they want to, like when they specifically refer to Dr. Karas' social media posts. Thus, they clearly know how to allege a particular Defendant allegedly committed a particular act yet have never alleged any particular individual failed to obtain their informed consent and thereby, misled them.

The failure to allege personal involvement in the administration of Ivermectin is sufficient to dismiss the claims against Dr. Karas and Sheriff Helder individually. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (1983 requires personal involvement). Additionally, general responsibility for supervising the detention center is insufficient to establish personal involvement. *Reynolds v. Dormice*, 636 F.3d 976, 981 (8th Cir. 2011). Thus, additionally for this separate reason, any claim against Sheriff Helder—who is not alleged to be a medical professional or to have been personally involved in the administration of Ivermectin to Plaintiffs—must be dismissed.

Plaintiffs' retort, that they are allegedly "…not required to plead the who, what, when, where, why, and how of their cause of action," without citation to any authority, is clearly

incorrect. Doc. No. 42, p. 1, fn. 1. Of course, Plaintiffs must allege actionable conduct, that also surmounts qualified immunity, by the Defendants they chose to sue. In that regard, Plaintiffs also ignore the fact it is their burden to show the law was clearly established, a burden they cannot meet. *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018). Taken to its logical conclusion, footnote 1 of the Response would permit a party to sue whomever, for nothing, and for no reason. That would be a patently frivolous complaint and does not comport with *Iqbal*. 556 U.S. 662, 679 (2009) (noting that legal conclusions are not to be regarded as true but where made, must be accompanied by well-pled factual allegations). Rather, footnote 1 of Plaintiffs' Response is their attempt to avoid discussing the fact that they have never alleged that Dr. Karas himself administered Ivermectin to them, much less that he personally misled them about what the medicine was. This even though, according to their Response, this alleged "deception" is the main focus of their claim (not the use of Ivermectin in and of itself). Plaintiffs' arguments are ultimately unavailing.

## ARGUMENT

### A. *No Constitutional Violation: all Defendants are entitled to judgment*.

Plaintiffs fail to cite, and cannot cite, any controlling precedent that recognizes a constitutional right in obtaining informed consent or even a constitutional right not to allegedly be misled about medications that are administered. As stated, to show a violation of substantive due process generally, the Eighth Circuit has said:

> In the context of substantive due process, an individual must overcome a very heavy burden to show a violation of the Fourteenth Amendment. To balance competing interests in a substantive due process analysis, "the question is not simply whether a liberty interest has been infringed but whether the extent or nature of the [infringement] ... is such as to violate due process." *Moran v. Clarke,* 296 F.3d 638, 647 (8th Cir.2002) (en banc) (alteration in original) (citation omitted) (internal quotation marks omitted). To establish a violation, the "plaintiff must demonstrate *both* that the official's conduct was conscience-shocking, *and* that the

>official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."

*Hall v. Ramsey County*, 801 F.3d 912, 917-18 (8th Cir. 2015). Plaintiffs must allege (and ultimately prove) both the violation of a fundamental right, and conscience-shocking conduct *by these Defendants*. They have not. *See* Doc. No. 34, pp. 9-12.

In a recent case involving the "nonconsensual intrusion into one's body," the Eighth Circuit found no substantive due process violation. *Buckley v. Hennepin Co.*, 9 F.4th 757 (8th Cir. 2021). There, the Plaintiff was dangerously agitated, and she was given a ketamine injection forcibly. *Id*. at 763. The Court held the threshold question is "whether the behavior of the government *officer* is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id*. (emphasis added). "'[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.'" *Id*. (quoting *County of Sacremento v. Lewis*, 523 U.S. 833, 849 (1998)). Importantly, the Court found that "*Buckley's Complaint did not allege*, and her briefs on appeal did not address, the conscience shocking element of this substantive due process claim." *Id*. (emphasis added). Thus, the Court found the District Court correctly granted judgment on the pleadings under Rule 12(c). *Id*. The same is true here. *See* Doc. No. 34, pp. 9-12. Indeed, as stated in the Defendants' opening brief, Plaintiffs never allege the violation of a right firmly rooted in our Nation's history and tradition or the conscience-shocking element of a substantive due process claim.

Importantly, the *Buckley* Court focused on the particular government official that allegedly committed the wrong. Plaintiffs' scattershot Amended Complaint *nowhere* alleges Sheriff Helder or Dr. Karas *personally* failed to inform them (or allegedly misled them) about the administration of Ivermectin. The same was true in *Buckley* and the Eighth Circuit found the physicians were at

5

least entitled to qualified immunity. *Id*. at 764-65. In this case, Plaintiffs never allege either individual Defendant was personally involved with their COVID-19 treatment.

Furthermore, despite Plaintiffs' editorializing, Dr. Karas was on firm ground (as noted in Defendants' opening brief) for utilizing Ivermectin to treat and prevent death from COVID-19. Numerous studies supported the use of Ivermectin. Although, again, it is far from clear Plaintiffs are attempting to make any claim regarding the use of Ivermectin in and of itself. But more importantly, Plaintiffs cannot and do not argue that any Defendant intended to harm the Plaintiffs. For these reasons alone, Defendants are entitled to judgment on the pleadings. *Buckley*, 9 F.4th at 763.

Plaintiffs rely chiefly on a Seventh Circuit decision, *Knight v. Grossman*, 942 F.3d 336 (7th Cir. 2019), which is not controlling precedent herein, to assert a right in informed consent exists under the substantive component of the Due Process Clause. Plaintiffs admit that the few courts that have accepted such a right exists have found four limitations on the right. Setting aside the first two limitations for the time being, the third and fourth limitation are not met even on the *facts* pled.

The third limitation announced by the Seventh Circuit is that a prisoner must prove that the defendant acted with deliberate indifference to his right to refuse medical treatment. Again, there is not a single allegation that Dr. Karas administered any medicine to Plaintiffs, that Karas himself violated their alleged right in informed consent, or that Karas misled them. Obviously, Sheriff Helder, who is not a medical professional, was not involved in Plaintiffs' medical treatment. Plaintiffs identify no factual basis which would have rendered Helder's reliance on the professional medical judgment of medical staff (*see* Doc. No. 41, pp. 4-5) in their treatment of Plaintiffs with COVID-19, as "unreasonable". When prison officials do not implement a prisoner's requested

course of treatment, but rather defer to medical staff, they do not violate the Eighth Amendment, nor relatedly, the Fourteenth Amendment. *See Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994); *Taylor v. Turner*, 884 F.2d 1088, 1090 (8th Cir. 1989). Sheriff Helder, who is not a medical professional, is entitled to rely on medical staff and cannot be liable for any treatment decisions. *Camberos v. Branstad*, 73 F.3d 174 (8th Cir. 1995).[2] Because Plaintiffs cannot overcome the third limitation found by the Seventh Circuit, even Plaintiffs' reliance on that decision is unhelpful and—even if it were controlling, which it is not—Defendants here are entitled to judgment on the pleadings.

The fourth limitation identified by the Plaintiffs from the Seventh Circuit is that "a prisoner's right to medical information must give way when outweighed by a countervailing state interest." Doc. No. 42, p. 9. That is, is the alleged action taken reasonably related to a legitimate penological interest? According to the Plaintiffs, the Seventh Circuit's example was where "forced medication is needed to avoid the spread of contagious disease …." *Id*. at p. 10. Here again, Plaintiffs claim that Ivermectin is "of dubious efficacy at all." However, the use of Ivermectin alone is not the Plaintiffs' claim, according to the Plaintiffs. Their claim is unknown or unnamed persons failed to obtain their informed consent to use Ivermectin and misled them. But, this fourth limitation is not overcome by the Plaintiffs in this case. The pandemic and the countervailing state

---

[2] This is where the Plaintiffs vacillate about the focus of their claims. Their Response initially announces the issue in this case is Plaintiffs' allegation they were given Ivermectin without their informed consent, and that they were allegedly misled. However, when discussing claims against Sheriff Helder, Plaintiffs pivot and appear to allege the use of Ivermectin *at all* was unconstitutional. There is no allegation in the Amended Complaint that Sheriff Helder was allegedly knowledgeable that Plaintiffs had purportedly not given informed consent for the use of Ivermectin or that he allegedly knew Plaintiffs were purportedly misled. So, Plaintiffs' strategy is to mischaracterize their own allegations as noted in the introduction or apparently argue that Sheriff Helder's alleged knowledge of the use of Ivermectin alone (apart from any consent issue) is sufficient to avoid his dismissal. Plaintiffs' allegations against Sheriff Helder are insufficient, as are Plaintiffs' allegations against Dr. Karas and KCH.

interest in it spreading among inmates in a relatively closed setting (the WCDC) outweighs Plaintiffs' claimed right under the *Knight* case.

Even if the *Knight* case was controlling in this Circuit, Plaintiffs cannot surmount either the third or fourth limitations announced therein. Plaintiffs cannot make a substantive due process claim based on the facts they have alleged in the Amended Complaint. Plaintiffs' due process claims fail on the pleadings.

      **B.**     ***Sheriff Helder is entitled to judgment on the pleadings***.

As noted above, Plaintiffs have failed to allege personal involvement of Sheriff Helder in their medical care. Further, there can be no reasonable *inference* of personal involvement in this case as there is no allegation that Sheriff Helder is a medical professional. As such, Sheriff Helder is legally entitled to rely on medical staff regarding medical treatment. Sheriff Helder is entitled to dismissal. However, Plaintiffs now claim that they have made a "failure to supervise" claim against Sheriff Helder. A careful reading of the Amended Complaint shows there is no such claim. Further, as stated above, Plaintiffs mischaracterize their own Amended Complaint on page 21 of their Response, in citing to paragraphs 57 and 58 of the Amended Complaint. Remarkably, even though Plaintiffs have patently not made a failure-to-supervise claim, in footnote 4 of their Response they claim "unsurprisingly, Sheriff Helder makes no mention of this test," referring to elements of such a claim (or former elements of such a claim). Undoubtedly, Sheriff Helder has not mentioned a failure-to-supervise claim, because there is no such claim in the Amended Complaint. Nevertheless, Defendants will discuss why such a claim would fail.

First, as the Eighth Circuit has noted "'…a plaintiff must plead that *each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution.'"

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)(emphasis added) (quoting *Iqbal*, 556 U.S. 662 (2009)). The United States Supreme Court limited supervisory liability claims in *Iqbal* and said:

> Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only 'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor cause the deprivation.'

*Parrish*, 594 F.3d at 1001 & fn. 1 (quoting *Iqbal*, 556 U.S. at 1949). There is no allegation of personal involvement of Sheriff Helder (or Dr. Karas) in any actual administration of medicine to inmates.

Second, as stated, non-medical jail personnel are entitled to rely on medical personnel. It is further incorrect that Sheriff Helder, a non-medical official, could be deemed the "supervisor" of medical professionals regarding prescription medications for treatment of novel diseases. A Sheriff, such as Sheriff Helder, who lacks medical expertise, cannot be liable for the medical staff's diagnostic decisions. *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir.1995). Further, prison officials cannot substitute their judgment for a medical professional's prescription. *Meloy v. Bachmeier*, 302 F.3d 845 (8th Cir. 2002) (citing *Zentmyer v. Kendall County*, 220 F.3d 805, 812 (7th Cir.2000)).

Most importantly, there is no failure-to-supervise claim alleged anywhere in the Amended Complaint. Further, there are simply no facts alleged in the Amended Compliant upon which to base any inference of a claim against Sheriff Helder in his personal capacity. Sheriff Helder is entitled to judgment on the pleadings.

  C.  *Qualified Immunity*

Plaintiffs have failed to show any clearly established law violated by these Defendants in their Amended Complaint. The law is not clearly established here, where there is no controlling

authority or a robust consensus of persuasive authority to the effect that there is a right to bodily integrity encompassed in an alleged medical malpractice claim involving lack of informed consent. *Lane v. Nading*, 927 F.3d 1018, 1022 (8th Cir. 2019) (discussing *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). In order to surmount qualified immunity, Plaintiffs must at least show that there is controlling authority, or a robust consensus of persuasive authority, that is appropriately specific to this case, that existed prior to the events in this case, that put the Defendants on notice of the right at issue. *Id*. Plaintiffs have not, and cannot, do so. In *Lane*, the Eighth Circuit reiterated that "'precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'" *Id*. The rule's contours must be "well defined at a 'high degree of specificity.'" *Id*. Plaintiffs must show that the law was "beyond debate."

It is important to look to a source of such immunity found by the United States Supreme Court. An important explanation is found in the United States Supreme Court's decision in *United States v. Lanier*, 520 U.S. 259 (1997). There, in a *criminal* civil rights case, the Court found a right for persons criminally charged with civil rights violations to a "fair warning requirement" that has three manifestations. First, "…the vagueness doctrine bars enforcement of 'a statute which either forbids or requires doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id*. at 266. Second, the "rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Id*. Finally, "…due process bars courts from apply a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id*. The Court then said:

> In the civil sphere, we have explained that qualified immunity seeks to ensure defendants 'reasonably can anticipate when their conduct may give rise to liability,'

> by attaching liability only '[i]f the contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id*. at 270 (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)). So conceived, the objected of the 'clearly established' immunity standard is not different from that of 'fair warning' as it relates to law 'made specific' for the purpose of validly applying § 242. The fact that one has a civil and the other a criminal law role is of no significance; both serve the same objective, and in effect the qualified immunity test is simply the adaptation of the fair warning standard to give officials (and, ultimately, governments) the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes.

*Id*. at 270-71.

Here, Plaintiffs cite *Pabon v. Wright*, 459 F.3d 241 (2d Cir. 2006), for the proposition that the right to informed consent is clearly established. However, even that Court disagreed and said it was not clearly established stating:

> [w]e do not agree with Pabon that *White*, *Benson*, and *Clarkson* render this right to medical information clearly established. ***When neither the Supreme Court nor this court has recognized a right, the law of our sister circuits and the holdings of district courts cannot act to render that right clearly established within the Second Circuit***."

*Id*. at 255 (emphasis added). There, the Second Circuit granted qualified immunity to prison doctors in that Section 1983 suit. So, that case, cited by Plaintiffs, supports qualified immunity here for Dr. Karas and Sheriff Helder. The Supreme Court case of *Cruzan by Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261 (1990), does *not* clearly establish any alleged substantive due process[3] right of informed consent in this case. *See Buckley*, 9 F.4th at 762-63. The *Cruzan* case is also factually inapposite. The Third Circuit in the case of *White v. Napoleon*, 897 F.2d 103, fn. 4 (3d Cir. 1990), cited by Plaintiffs, did *not* hold that there is a right to informed consent under

---

[3] Indeed, the words "substantive due process" are not present anywhere in the United States Constitution and the existence of substantive rights under the Due Process Clause of the Fourteenth Amendment has been and remains hotly debated. *See Cruzan*, 497 U.S. at 292-93 (Scalia, J., concurring).

11

the Due Process Clause. *Id*. ("There is, therefore, no need to consider whether torts of informed consent are actionable under section 1983). Furthermore, *White* involved allegations that a doctor acted with intent to harm inmates, which is not and cannot be alleged in this case. Indeed, as stated, there is no allegation in this case that Dr. Karas *personally* administered any medicine to the Plaintiffs or that he *personally* did so and "tricked" them into taking Ivermectin. Sheriff Helder and Dr. Karas are entitled to qualified immunity because the Plaintiffs have not alleged any violation, by these individuals, of clearly established law—controlling authority or a robust consensus of persuasive authority, set at the appropriate level of specificity, giving fair warning and clear notice that the alleged acts here are unconstitutional.

### D.     *Qualified Immunity for Dr. Karas*

The United States Supreme Court made clear: "…immunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, **or on some other basis**." *Filarsky v. Delia*, 566 U.S. 377, 389 (2012) (emphasis added) (finding private attorney engaged by government as investigator part time entitled to qualified immunity). Plaintiffs Amended Complaint alleges "[s]tarting in 2020 and continuing through the present, the importance of such healthcare services in the WCDC setting became particularly striking given the rise of COVID-19." Doc. No. 34, ¶ 13. Defendants agree, except to call the importance of healthcare merely "striking," doesn't go far enough. The importance of healthcare in the WCDC— where hundreds of inmates, like at many other correctional facilities, are housed closely and contracted COVID-19—was of critical, life or death importance and remains so.

Yet, Plaintiffs argue that, under such circumstances, the "government's need to attract talented individuals" should stop somewhere before a private doctor who owns a small clinic, but who also serves the WCDC as a public doctor during a worldwide pandemic. *See Filarsky*, 566

U.S. at 390. Indeed, just like the due process defense and rule of lenity announced in *Lanier*, the Court in *Filarsky* noted that a person who performs work sometimes for the government and sometimes privately will have a difficult time reasonably anticipating when their conduct may give rise to liability for damages. *Filarsky*, 566 U.S. at 391-92. With due respect to the panel of our Court of Appeals, *Davis v. Buchanan County, Missouri*, 11 F.4th 604 (8th Cir. 2021), was either wrongly decided considering *Filarsky* or is so factually inapposite given the present case— which involves a doctor of a small clinic and his staff managing medical care during a worldwide pandemic in a jail—that immunity should apply here for Dr. Karas. If the attorney who merely performed a personnel investigation in *Filarsky* was acting under color of law and entitled to qualified immunity, Dr. Karas undoubtedly should be entitled to the defense. Indeed, even considering *Davis*, it cannot be seriously argued that a physician and staff providing medical services to a public detention facility during a pandemic, where a significant outbreak of the disease has occurred, would not experience "unwarranted timidity" as to potential risk and litigation. Any argument to the contrary is fantasy. As stated above and in the opening brief, there is no controlling authority or a robust consensus of persuasive authority, set at the appropriate level of specificity, to put Dr. Karas on notice that his alleged actions (which again, don't involve failing to obtain informed consent or misleading the Plaintiffs; rather, simply using Ivermectin to treat COVID-19) violated any constitutional right. Thus, he is entitled to qualified immunity.

One last note must be made regarding the Plaintiffs' argument about Dr. Karas and qualified immunity. In arguing against qualified immunity for Dr. Karas, Plaintiffs again misrepresent their own allegations. They state in their Response: "[h]ere, the Amended Complaint alleges, among other things, that Dr. Karas and/or his agents were utilizing the unproven drug Ivermectin on Plaintiffs as a treatment for COVID-19 *without their informed consent*." They cite

the Amended Complaint at paragraphs 15, 18, and 14. None of those paragraphs allege Dr. Karas personally administered Ivermectin to any Plaintiff, that he did so without obtaining informed consent, or that he allegedly misled any Plaintiff. Plaintiffs cannot amend their Amended Complaint in response to a dispositive motion as stated above, and they simply should not mischaracterize it for obvious reasons. Dr. Karas is entitled to qualified immunity.

### E.     *Battery*

#### 1.     *Failure to allege a harmful or offensive contact*

In response to the Karas Defendants' motion regarding Plaintiffs' claim of battery, Plaintiffs claim a "touching" is not required to commit a battery and cite a treatise[4] (which is not controlling authority) and the unreported case of *Parkerson v. Arthur*, 2001 WL 719055 (Ark. Ct. App. June 27, 2001). Plaintiffs are wrong. Demonstrably, there was a "touching" in *Parkerson*. The Arkansas Court of Appeals said: "[a]ppellant alleged that appellees committed the tort of battery by inserting Orthoblock in her spine and fraudulently concealing the fact that they had placed in her spine a material that was not approved for spinal surgeries." *Id*. at *3, *6. Clearly, placing something in the Appellant's spine in that case involved touching her. Next, Plaintiffs argue that the case of *Mullins v. Helgren*, cited by Defendants, does not support Defendants' argument that Plaintiffs have failed to allege a harmful or offensive touching. Doc. No. 42, p. 23, fn. 5. Defendants cited *Mullins* because it states the elements for a claim of battery in Arkansas: "[i]n order to prove battery, Mullins had to show that Helgren acted with the intent to cause some harmful or offensive *contact* with her … that this *contact* resulted in and caused damages." 2022 Ark. App. 3, at *12 (emphasis added). Thus, a harmful or offensive "touching" or contact is a

---

[4] Notably, Plaintiffs do not cite any authority, potentially cited by Professor and former Chief Justice Brill in his treatise, for the proposition stated on pages 22 and 23 of their Response.

necessary element a Plaintiff must *plead* and prove. Plaintiffs never argue in their Response that they have pled a harmful or offensive *contact* or what that contact might be because they have not. Plaintiffs effectively concede they have not alleged such by arguing they weren't required to allege a "touching." Thus, Defendants are entitled to judgment on the pleadings as to the battery claim.

One final point should be made. In their discussion of the battery claim, Plaintiffs state: "…the core of this case is about the *administration* of an experimental medical treatment without Plaintiffs' (patients') knowledge of such treatment or informed consent to the same." Doc. No. 42, p. 23. Again, there is no allegation in the Amended Complaint that either Sheriff Helder or Dr. Karas *administered* Ivermectin to the Plaintiffs or that they purportedly did so without informing Plaintiffs what medicines they were being *offered*. And there is no allegation in the Amended Complaint that Sheriff Helder or Dr. Karas personally misrepresented what medicines Plaintiffs were being *offered* to treat, and frankly save, the Plaintiffs' lives from COVID-19. This omission is necessary, though fatal to the claims, because there is no allegation that either individual actually administered *any* medicine to these Plaintiffs. Plaintiffs' claims, including their battery claims, must be dismissed.

## 2. *Statutory Immunity*

Regarding state statutory immunity for torts, respectfully, the Defendants are correct notwithstanding various Arkansas cases discussed in *Bates v. Simpson*, 2019 WL 1607320 (W.D. Ark. April 15, 2019), an Order of this Court which, respectfully, Undersigned submits this Court implicitly abrogated in *Dillard v. City of Springdale, Ark.*, 2022 WL 403287, at *8 (W.D. Ark. Feb. 9, 2022). *See also Trammell v. Wright*, 2016 Ark. 147, 489 S.W.3d 636; *Williams v. Mannis*, 889 F.3d 926, 932-33 (8th Cir. 2018).

This requires more explanation. Indeed, the case of *City of Farmington v. Smith*, 366 Ark. 473, 237 S.W.3d 1 (2006), (cited in *Bates)* was a civil rights action under the Arkansas Civil Rights Act (ACRA), *not* a tort case.[5] Qualified immunity is a common law doctrine; it does not emanate from a state tort immunity statute. Likewise, *Battle v. Harris*, (also cited in *Bates)* involved a due process claim, not a tort at all. 298 Ark. 241, 766 S.W.2d 431 (1989). Most importantly, is this Court's decision in *Dillard*, 2022 WL 403287, at *8 (W.D. Ark. Feb. 9, 2022), wherein the Court *granted* summary judgment and immunity via the very statute at issue here on intentional tort claims, albeit, upon information and belief, based on an alternative argument that was made in *Trammell*. That argument was, a court should look to the facts of a case (or here the facts alleged) to see whether they represent alleged intentional misconduct or alleged negligent misconduct, and if it's the latter, despite the label placed on the cause of action, *statutory* immunity should apply.

Not only has the Arkansas Supreme Court recently granted immunity for an intentional tort in *Trammell v. Wright*, 2016 Ark. 147, 489 S.W.3d 636, the Eighth Circuit, citing *Trammell*, has granted state statutory immunity to the intentional tort of outrage in *Williams v. Mannis*, 889 F.3d 926, 932-33 (8th Cir. 2018). In *Trammell*, even though the Arkansas Supreme Court said it would not consider the argument currently before the Court (after finding that Officer Trammell did not commit the intentional tort of false arrest), the Court then said: "[w]e find that the circuit court erred by denying summary judgment *based on immunity*." *Id*. at *5 (emphasis added). Indeed, only by virtue of the assertion of statutory immunity in that case, did the Arkansas Supreme Court accept the case on interlocutory appeal. The Plaintiffs can ignore this argument if they want, but it

---

[5] Calling any constitutional claim a "constitutional tort" as courts and commentators often do is misleading. A tort arises at common law. An alleged violation of either the State or Federal Constitution is redressable *only* through either a federal or state statute, *i.e.*, Section 1983 or the ACRA.

is hardly frivolous given both *Trammell* and *Williams*. Assuming *arguendo,* the Court disagrees and finds Plaintiffs have sufficiently pled a battery claim, the Karas Defendants are entitled to immunity.

### F. *Karas Correctional Health should be dismissed*.

As stated above, because there is no underlying constitutional violation and Plaintiffs have failed to state a claim upon which relief can be granted against any Defendant, there can be no liability against Karas Correctional Health. *See Los Angeles v. Heller*, 475 U.S. 796 (1986). However, even if the Court found a personal capacity claim sufficiently pled, Plaintiffs never allege a policy or custom of KCH in failing to obtain informed consent for the use of Ivermectin or a policy or custom of misleading inmates regarding the administration of the medicine. *Springdale Educ. Assn. v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). This failure alone justifies dismissal for KCH. *Id*.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed.

TIM HELDER, et al,
*Defendants*

Michael A. Mosley
Michael A. Mosley
Ark. Bar No. 2002099
Jason E. Owens
Ark. Bar. No. 2003003
JASON OWENS LAW FIRM, P.A.
**Mailing Address:** P.O. Box 850 Conway, Arkansas 72033-0850
**Physical Address:** 1312 Oak Street Conway, Arkansas 72034
Telephone (501) 764-4334
Telefax (501) 764-9173
email: mosley@jowenslawfirm.com

&

JaNan Arnold Thomas, Bar No. 97043
ASSOCIATION OF ARKANSAS COUNTIES
RISK MANAGEMENT SERVICES
1415 W. Third
Little Rock, Arkansas 72201
Telephone (501) 372-7550
email: jthomas@arcounties.org