IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

EDRICK FLOREAL-WOOTEN; JEREMIAH LITTLE;
JULIO GONAZALES; DAYMAN BLACKBURN;
THOMAS FRITCH                                                                    PLAINTIFFS

VS.    NO.  5:22-cv-05011-TLB

TIM HELDER, SHERIFF OF WASHINGTON COUNTY,
ARKANSAS, in his individual capacity;
KARAS CORRECTIONAL HEALTH, P.L.L.C;
DR. ROBERT KARAS, M.D., in his individual capacity                DEFENDANTS

### DEFENDANTS' REPLY TO RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Come now, Defendants, by and through Undersigned Counsel, and for their Reply to Response to Defendants' Motion for Summary Judgment:

**I.      DISCUSSION**[1][2]

Plaintiffs are once again attempting to alter their claim: they now allege their Amended Complaint involves the "Karas Covid Protocol"[3] rather than only his inclusion of Ivermectin to treat COVID. They cannot amend in response to a dispositive motion and the amendment deadline was September 14, 2022. Doc. No. 32, p. 2 (which was unchanged by Doc. No. 68). *Morgan Dist.*

---

[1] In Doc. No. 99, on pages 1-2 (paragraphs 1-11), Plaintiff make unsupported and incorrect factual assertions with no record citations. Thus, those paragraphs must be stricken and do not create facts precluding summary judgment. "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce of El Dorado, Ark. v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

[2] Nothing herein waives Defendants' right to move to enforce the binding settlement agreement between the Parties and Defendants reserve the right to do so.

[3] Plaintiffs minimize the considerations that went into Dr. Karas' determination of what medicines would assist in treating COVID (which as of August of 2021, was (and is) novel, deadly, and needing of physicians willing to learn everything they can about the virus and how to treat it. Consider **Reply Exhibit A**, excerpts of Dr. Karas' deposition, 30:3-9, 30:16-20, 32:1-20, 34:25—35:1-8, 36:11-25, 37:8-9.

1

*Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989); *Richardson v. Omaha Sch. Dist.*, Case No. 3:17-CV-3111, 2019 WL 1505427, at 2 (April 5, 2019). But that's what Plaintiffs are attempting, and it should not be permitted. Doc. No. 97, pp. 1-2; *Compare* Doc No. 34, *Amended Complaint*, Section I, pp. 1-2, ¶¶ 14-20, 22-37.

Additionally, no Plaintiff grieved about any medicine other than Ivermectin and, thus, any such attempt to change their claim now is barred by the PLRA, despite knowing all the medicines they were offered and accepted through a FOIA request by one of their attorneys from the ACLU on August 25, 2021. **Reply Exhibit B**, *Response to ACLU 8/25/21 FOIA request*;.**Reply Exhibit C**, *Grievances*. On this basis alone, Defendants are entitled to summary judgment.

Next, without discussing the binding precedent of *Buckley v. Hennepin Co.*, 9 F.4th 757 (8th Cir. 2021), Plaintiffs misidentify the issue here. It is not whether Plaintiffs were not told by a non-policymaking employee that Ivermectin was part of the medicines ordered for Plaintiffs for COVID. The issues are: (a) did Dr. Karas have any personal involvement in treating Plaintiffs and, more specifically, even assuming he did, did he fail to inform Plaintiffs that the medicines included Ivermectin? The answer: he never met the Plaintiffs, never treated the Plaintiffs, and never failed to advise them their medicines included Ivermectin. And if Med-Passer Janna Hinely failed to advise them of the medicines they were receiving, that contravenes KCH's undisputed practices. Second, is there a policy, custom, or practice directing KCH employees to violate inmate patients' rights? The answer: no, based on the undisputed facts.

Plaintiffs simply assert that an alleged lack of "informed consent" constitutes a constitutional claim, by citing non-binding, out-of-Circuit precedent. But they completely ignore *Buckley*. Our Court of Appeals specifically reserved the question of whether an alleged lack of informed consent might state a constitutional claim in *Buckley*. *Id*. at 765. More importantly, the

Court in *Buckley* found the doctor defendants—who *were* conducting a ketamine study that the Plaintiff was unknowingly enrolled in—were found not to have violated the Plaintiff's constitutional rights because, as the Court said: "'…supervising physicians can be held personally liable under § 1983 *only* 'when they supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference towards the violation.'" *Id*. at 764. Doc. No. 76, p. 12. Just like Plaintiffs here, who refer to Dr. Karas as a "mastermind" and "architect," that is not enough (despite the colorful terminology) to hold Dr. Karas liable if a non-policymaking employee failed to advise Plaintiffs Ivermectin was part of their medicines. *Id*. There, the Plaintiff alleged the same thing, but the Eighth Circuit found that since the doctors themselves did not respond to the welfare check call, did not place her on a transportation hold, did not forcibly secure her in the ambulance, and did not forcibly inject her with ketamine to sedate her—despite this being part of their study into ketamine—they could not be held liable. Thus, Dr. Karas, who indisputably never treated or even met the Plaintiffs here, cannot be held liable and, thus, there is a lack of an underlying constitutional violation. This also dictates summary judgment for KCH. *Turner v. White*, 980 F.2d 1180, 1183 (8th Cir. 1992) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Also, and crucially, Defendants' SUMF paragraph 214 stated: "Dr. Karas (or anyone working for KCH) never conducted an Ivermectin experiment, ever, involving two sets of test subjects, one being COVID patients at the WCDC and one being patients at Dr. Karas' private clinic. **Plaintiffs' response** to this statement of fact states: "Undisputed Dr. Karas did not conduct and (sic) "experiment involving two sets of test subjects, one being COVID patients at the WCDC and one being parties at Dr. Karas's private clinic." Doc. No. 100, p. 64.[4] Plaintiffs' complaint that

---

[4] This is so despite the facts that Defendants provided properly redacted copies of private clinic patients to Plaintiffs' Counsel during discovery. To the extent that was ever a claim in this case based on footnote 6 of the Amended

3

the term "experiment" is vague is disingenuous given the ACLU's pervasive use of that term throughout national news to impugn Dr. Karas. Additional admissions in Doc. No. 100 should be reviewed carefully as well as they completely contradict the Amended Complaint and statements to the media. See, *i.e.*, Doc. No 100, Resp. to SUMF ¶¶ 212, 219.

This is so despite the facts that Defendants provided properly redacted copies of private clinic patients to Plaintiffs' Counsel during discovery. To the extent that was ever a claim in this case based on footnote 6 of the Amended Complaint, Defendants are entitled to summary judgment on such claim and dismissal with prejudice because no alleged experiment ever occurred. Additionally, in response to Defendants' SUMF, Plaintiffs routinely call the term "experiment" vague. The ACLU—whose inclusion in this case is unclear—never thought the term was vague when claiming to national media that Dr. Karas had engaged in a "medical experiment" or "medical experimentation." Plaintiffs' argument that the term is vague should be stricken.

Additionally, Plaintiffs refusal to admit the entirety of Ms. Alaytseva is simply a poor strategy to attempt to twist her clear testimony as shown below. She finished her response to Counsel's question as reflected in Defendants' SUMF paragraph 61. She further testified that she informs patients if a drug is being used off-label in Defendants' SUMF paragraph 67. Further, Plaintiffs admit that Nurse Hinely was never informed prior to the Fall of 2021 that any med-passer failed to follow the procedure requiring med-passers to goo over the list of drugs on the distribution list with each jail patient. Doc. No. 100, response to ¶ 18. On that basis alone, KCH cannot be held liable due to the admission of its practice to advise patients of their medicines and due to lack of foreseeability. Dr. Karas is entitled to summary judgment due to not having treated any of the Plaintiffs and not allegedly having tricked them.

---

Complaint, Defendants are entitled to summary judgment on such claim and dismissal with prejudice because no alleged experiment ever occurred.

a. **Constitutional allegations against KCH**.

Next, Plaintiffs take a truncated version of Ms. Vladislava Alaytseva's testimony to fit their new false narrative in this case (like the experiment issue noted above). Here's what really happened:

> **Mr. Vance**: Do you remember any instruction as to whether you were to identify to the detainee what medication they were receiving?
>
> **Ms. Alaytseva**: Yes. In any case, anytime a detainee or a patient is given any new medications, they are allowed to ask us what they are. I'm allowed to answer what they are. And as far as any further questions, as far as side effects or things like that, I ask them to refer those questions back to the kiosk so that a provider can answer those.
>
> . . .
>
> **Mr. Vance**: Do you recall passing out Ivermectin as treatment of COVID-19 to quarantined individuals in December 2020?
>
> **Ms. Alaytseva**: I don't have a timeline in my head. I can answer to you that I do know I did pass out ivermectin *to individuals that are prescribed it that were willing to take it* …."

**Reply Exhibit D**, Deposition of Ms. Vladislava Alaytseva, 31:11-16.

> . . .
>
> **Mr. Vance**: You said "medication training." Were you trained to inform the detainee that the medication was being used for off-label use?
>
> **Ms. Alaytseva**: Yes. I was trained to tell them what they were taking and what it was for. And if it has an off-label use, and that's what they were taking it for, then I am to inform them that that's what they're talking it for and it's an off-label use.
>
> **Mr. Mosley**: Now just to be very clear, you and the other med passers, as I understood your testimony, were informed to tell inmates what ivermectin was, is that correct?
>
> **Ms. Alaytseva**: Yes.

**Reply Exhibit D**, 57:12-18.

This is 100% percent consistent with Plaintiff's Fritch's testimony as to what he was told: he was offered Ivermectin, it was an anti-parasitic, and it was used to combat COVID-19. It's consistent with Sheriff Helder's testimony. Doc. No. 98-21, 71:12-16. It is consistent with Kelley Hinely's testimony. Doc. No. 77, ¶¶ 12, 16, 17, 19. It is consistent with Jolana Wilson's testimony. Doc. No. 77, ¶¶ 37 (noting this is also KCH's practice), & 39. This is consistent with Ms. Alaytseva's testimony noted above.

Most importantly, it is Dr. Karas' practice—assuming he sees a particular patient and prescribes he or she medicine—to advise the patient of the medicines they been prescribed. Doc. No. 77, ¶¶ 101, 109. Dr. Karas never treated the Plaintiffs and never administered medicine to them. *Id.* at ¶ 103. Additionally, Dr. Karas was never informed prior to Plaintiffs' claims that any Plaintiff was not told the medicines they were receiving or that any alleged employee of KCH attempted to trick the Plaintiffs into unknowingly taking Ivermectin. Doc. 77, ¶¶ 108, 110.

Thus, KCH did not have a policy, custom, or practice that directed employees to fail to inform patients at the WCDC of the medicines they were prescribed. Even though Plaintiffs refuse to discuss the binding law regarding the standards for liability for an entity such as KCH (as discussed in subjection (b) below, that law makes clear KCH is entitled to summary judgment on Plaintiffs' constitutional claim.

> **b. KCH's final policymaker was never on notice of a prior widespread pattern of unconstitutional misconduct and thereafter exhibited deliberate indifference to the same**.

As just shown, the undisputed facts are that (a) Dr. Karas never treated the Plaintiffs; (b) KCH's practices required providers, paramedics, and med-passers each individually to advise WCDC patients what medicines they were getting, and (c) Dr. Karas was never put on notice that any KCH employee failed to follow the directive to inform patients the medicines they were

receiving. This cannot state a claim against KCH on the undisputed facts. A single allegedly unconstitutional decision by a non-policymaking official cannot create a "custom." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). And there is no evidence here of a policy or practice that directed any KCH employee to allegedly violate Plaintiffs' rights. *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991-92 (8th Cir. 2015). In determining whether entity liability exists or not, our Courts must use strict standards of causation and culpability. *Bd. of the County Commissioners of Bryan Cnty v. Brown*, 520 U.S. 397, 405 (1997).

Plaintiffs constantly bemoan the fact that, after APRN Hinely reviewed Janna Hinely deposition testimony, she immediately instituted retraining of all employees That is precisely KCH should have done even assuming *arguendo* Janna Hinely did not advise Plaintiffs of the medicines they were offered for COVID-19. *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996).

As to their new Singulair claims, Dr. Karas was asked by Undersigned: this [the data sent to the Canadian Doctor] does not represent an experiment that you conducted, does it? Karas: "No." *If* Plaintiffs are complaining that Dr. Karas shared patient data for a proposed Singulair study, in addition to being barred by the PLRA, Plaintiffs lack standing to make such a claim because the data did not include their data. *United States v. James*, Crim. No. 18-216 (SRN/HB), 2023 WL 3231441, at 3 (May 3, 2023) (slip copy) (citing *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014)).

The Defendants are entitled to summary judgment. Additionally, Plaintiffs concede Sheriff Helder is entitled to summary judgment.

WHEREFORE, Defendants respectfully request the Court grant them leave to supplement their motion to stay with the attached supplement and exhibits and for all other and proper relief to which they are entitled.

TIM HELDER, et al,
*Defendants*

Michael A. Mosley
Michael A. Mosley
Ark. Bar No. 2002099
Jason E. Owens
Ark. Bar. No. 2003003
JASON OWENS LAW FIRM, P.A.
**Mailing Address:** P.O. Box 850 Conway, Arkansas 72033-0850 **Physical Address:** 1023 Main St, Ste 204
Conway, Arkansas 72032
Telephone (501) 764-4334
Telefax (501) 764-9173
email: mosley@jowenslawfirm.com
